UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TINA PRICHARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:18-CV-1617-SPM |
| | ) |
| | ) |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Tina Prichard ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill as defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

1

## I. PROCEDURAL BACKGROUND

In July 2014, Plaintiff applied for DIB and SSI, with an alleged onset date of January 10, 2013. (Tr. 14, 147-48, 211-17, 261-66). The alleged onset date was subsequently amended to July 16, 2014. (Tr. 284). Plaintiff's applications were initially denied. (Tr. 147-48). On January 6, 2015, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 158-63). The ALJ held a hearing on September 29, 2016. (Tr. 90-130). On July 3, 2017, the ALJ issued an unfavorable decision. (Tr. 14-28). On July 17, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND

Plaintiff applied for disability on the basis of right arm pain, hand numbness, carpal tunnel syndrome in both hands, and cervical spondylosis with myopathy. (Tr. 306). In her 2014 Function Report, Plaintiff reported that both of her hands are numb, that she cannot hold things or pick things up, and that she has pain in her right arm all the time. She noted that she could not write and her mother was helping her fill out the form. (Tr. 323). She reported that because of her hands, she cannot get on the computer or clean house. She cannot do buttons or zippers, cannot feel whether the soap is out of her hair when she showers, and has trouble shaving because the razor always falls out of her hand. (Tr. 324). She cannot prepare meals, because she cannot stir things and cannot pick up pans without dropping them. (Tr. 325). She sometimes drives short distances using her left hand. (Tr. 326). She also reported that she cannot lift anything, squat, reach, kneel, or use her hands, because her "spine is messed up." She did not report problems with walking, standing, sitting, or any mental capabilities. (Tr. 328).

On Plaintiff's 2014 work history report, she reported that she had worked as an inventory specialist since 2011, and she was "still there on leave." (Tr. 315). In her Disability Report Form, she reported working full time until July 15, 2014, the day before her alleged onset date. (Tr. 306-07). She reported consistent full-time work going back to 2002. (Tr. 307).

At the hearing before the ALJ in 2017, Plaintiff testified as follows. Plaintiff was born on December 4, 1971, and she has a tenth-grade education. (Tr. 97). She has worked in the past doing factory jobs, including a machine operating job. (Tr. 100). In 2014, she tried to go back to work for three months, in a job that involved doing inventory, standing on her feet all the time, and keying a lot. (Tr. 109-11).

Plaintiff has pain in her neck, spine, and arm, and numbness in her hands. (Tr. 101, 105-06). She can brush her hair, but it is hard for her to shower because she cannot lift her arms above her head; if she holds them up, they get dead and start hurting. (Tr. 101-02). When she washes her hair, sometimes she does not know if she got the conditioner out, because she cannot feel it. (Tr. 105). She cannot grab anything out of a cabinet that is above her head, because she will drop it. (Tr. 120). She can grasp things, like a carton of milk, but cannot hold them. (Tr. 105). She does not trust herself to hold a coffee cup, because she so often drops things. (Tr. 105). She can dress herself, but she does not wear buttons or tying shoes, because she cannot do them. (Tr. 107). She cannot write with a pen anymore. (Tr. 122). She tries to do things like stirring a pot, but she cannot. (Tr. 103). However, she can feed herself and hold utensils, and she can make a fist. (Tr. 105-06). The ALJ pointed out that during her testimony, she was moving her arms and hand quite a lot; she stated that she tries to use her arms a lot, but they hurt. (Tr. 102-03).

Plaintiff also reported that she cannot sit or stand very long. (Tr. 101).

Plaintiff takes Gabapentin for pain; she does not like to take pain drugs because they knock her out and she cannot function. (Tr. 102). She testified that she gets the runaround from her doctors about her issues. (Tr. 103).

Asked whether she needed carpal tunnel surgery, she testified that she would be willing to get carpal tunnel surgery if it would help her. (Tr. 109). She stated that her main thing was getting her neck fixed, because she cannot tip her head back or forward all the way. (Tr. 109).

On a typical day, Plaintiff takes naps to relax her neck and tries to walk her mother's dog. (Tr. 109). Plaintiff does drive, though she does not get on the highway. (Tr. 104).

With regard to the medical treatment records and other records, the Court adopts the facts reflected in the parties' respective statements of fact and responses. The Court will cite to specific records as needed in the discussion section below. Briefly, as set forth in the parties' statements of fact, Plaintiff complained to several doctors in 2013 of hand numbness and arm pain, which she reported caused her difficulty at work with the machine she had to hold with her hand. In March 2014, about four months prior to the alleged onset date, Plaintiff underwent surgery on her cervical spine, indicated by a history of bilateral hand numbness, mild bilateral carpal tunnel that did not respond to splint use, neck pain that was worsened by a car accident a week earlier, and pain radiating down her arms. In the months and years following her surgery, Plaintiff frequently continued to seek treatment for neck pain, arm pain, hand pain, and hand numbness from several nurse practitioners and doctors. Her treatments included medications (such as Gabapentin and NSAIDs), wrist braces, and steroid injections. Results of examinations and testing (including imaging, a myelogram, and nerve conduction testing) were mixed, with MRI findings of "moderate to severe" cervical problems, EMG/NCV testing revealing chronic neurogenic changes affecting cervical nerve roots, and examination findings revealing diminished sensation in the hands, but

4

also findings showing good range of motion and normal or nearly-normal strength. She saw several doctors who discussed the possibility of surgery but did not recommend it at this time.

The record also contains the February 2017 opinion of a consultative examiner, Riaz A. Naseer, M.D., who found that Plaintiff could lift and carry up to ten pounds frequently but could never lift or carry heavier weights; could sit for two hours at a time and six hours total in a workday; could stand for one hour at a time and one hour in an eight-hour work day; could walk for one hour total and one hour in an eight-hour workday; could reach overhead and in all directions occasionally; could handle, finger, feel, and push/pull frequently; could occasionally operate foot controls; could never climb stairs, ramps, or scaffolds; and could never balance, stoop, kneel, crouch, or crawl; and could never be around unprotected heights or moving mechanical parts. (Tr. 750-53).

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy

exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R.

§§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

### IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since July 16, 2014, the alleged onset date; that Plaintiff has the severe impairments of residuals of C4-5 cervical fusion and carpal tunnel syndrome; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 17-22). The ALJ found that Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: the claimant requires a sit/stand option defined as allowing [Plaintiff] to alternate between sitting and standing positions at no greater than 30 minute intervals throughout the day; never climb ladders, ropes, and scaffolds; never crawl; occasionally crouch, kneel, stoop, balance, and climb ramps and stairs; occasional reaching overhead and frequent reaching in other directions; frequent handling, fingering, and feeling; avoid all exposure to operational control of moving machinery and unprotected heights.

7

(Tr. 22-23). At Step Four, the ALJ found Plaintiff unable to perform any past relevant work. (Tr. 26). At Step Five, relying on the testimony of a vocational expert, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including polisher, eyeglass frames; order clerk; and weave charting clerk. (Tr. 27). Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from July 16, 2014, through the date of his decision. (Tr. 28).

V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ improperly discounted or ignored Plaintiff's subjective complaints of pain, and (2) that the RFC is not supported by substantial evidence or an explanation of how the evidence supports the RFC.

A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If,

after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Evaluation of Plaintiff's Subjective Complaints

The Court first considers Plaintiff's argument that the ALJ improperly discounted or ignored Plaintiff's subjective complaints of pain. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the Commissioner must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).[2] The Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; the precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8 (describing several

---

[2] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529; 416.929.

9

of the above factors, as well as evidence of treatment other than medication that an individual receives); 20 C.F.R. § 416.929(c)(3) (same). However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

Plaintiff's principal complaints are related to her inability to use her hands and arms because of hand numbness and arm and neck pain. The ALJ discounted those complaints almost completely by finding that she was capable of frequently fingering, handling, and feeling; frequently reaching in all directions except overhead; and occasionally reaching overhead.

Although it is certainly the prerogative of the ALJ to discount a Plaintiff's subjective complaints, SSR 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. The existing decision does not permit the Court to assess how the ALJ evaluated Plaintiff's symptoms, and it is not clear that the ALJ's analysis of those symptoms is supported by substantial evidence in the record.

In evaluating Plaintiff's subjective complaints, the ALJ appears to have relied in significant part on the fact that Plaintiff's doctors did not recommend that she have surgery, but rather recommended only conservative treatments such as NSAIDs, physical therapy, heat/ice, and occasional steroid injections. The ALJ noted that he "finds the consensus opinion of no surgery from [Plaintiff's] treating and examining doctors (Mollman, Wall, Shitut, Kang, Colorado, and Valone) to be highly persuasive." (Tr. 25). As Plaintiff argues, ALJ's suggestion that there was a

consensus opinion among Plaintiff's treating and examining physicians that she did not need surgery appears to have been an overstatement. Dr. Mollman actually *performed* surgery on Plaintiff's cervical spine a few months before the alleged onset date, based on allegations of symptoms similar to those Plaintiff complained of during the disability period (Tr. 433, 437), and it does not appear that he made a second evaluation during the relevant period regarding whether she might need a second surgery. Dr. Wall, a hand and upper extremity specialist, did not specifically address in her notes whether Plaintiff needed surgery, though she did recommend testing, wrist braces, and medications. (Tr. 497-99). Dr. Kang, a spine fellow, does not appear to have made an express statement regarding whether Plaintiff needed surgery, though he did recommend that she "maximize her nonoperative treatment." (Tr. 669). Dr. Shitut noted, in March 2015, that no decision regarding surgery would be made until after Plaintiff received a neurological evaluation. (Tr. 587). Dr. Colorado noted in July 2015 that Plaintiff had been seen by Dr. Shitut and that she reported that no surgical intervention was recommended at this time. (Tr. 539). Dr. Colorado also wrote in the "Interim History" section of a January 2016 treatment note that Plaintiff had a surgical consultation in October 2015 and that "[n]o surgery is recommended at this time." (Tr. 529). In October 2015, Dr. Valone counseled Plaintiff that her treatment options would include either a removal of the cervical disk or a 3- level anterior cervical diskektomy and fusion. (Tr. 533). However, in December 2015 a note indicates that "Dr. Valone feels she should continue with injections if she is in pain and that she doesn't need surgery." (Tr. 531). Additionally, in the most recent medical record addressing Plaintiff's treatment needs, in October 2016, Dr. Anita Sadhu, M.D., wrote, "I do think she has a surgical issue" and referred Plaintiff to a spine fellow for further evaluation. (Tr. 739).

In light of the above evidence, the Court agrees with Plaintiff that the ALJ mischaracterized the evidence to some extent when he suggested that there was a consensus among Plaintiff's treating and examining doctors that she did not need surgery. The above records suggest that Plaintiff's physicians generally thought a second surgical intervention might be a possibility for Plaintiff, though some of them thought it was not warranted at this time.

Moreover, although it was certainly reasonable for the ALJ to consider Plaintiff's conservative course of treatment, *see, e.g., Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006), it is somewhat unclear why the ALJ seems to have placed such a great deal of weight on the absence of a recommendation that Plaintiff undergo a second surgery in evaluating her subjective complaints. There is no medical evidence to show *why* Plaintiff's treating physicians did not recommend surgery at this time, and the Court finds no evidence in the record to suggest that Plaintiff's doctors recommended against surgery because her pain and numbness were not sufficiently severe to warrant surgery. The Court also notes that none of Plaintiff's treating physicians suggested that she was malingering or exaggerating her symptoms. Although many of them found she did not need surgery "at this time," they continued to recommend medications, injections, and other forms of treatment.

The ALJ also noted that Plaintiff "went from one doctor to the next as she was not satisfied with their treatment or opinions, but said recommendations, treatment, and assessment were all very consistent." (Tr. 25). The ALJ is correct that Plaintiff was sometimes dissatisfied with her doctors' opinions and sought second and third opinions regarding her treatment and possible surgery. (Tr. 539-40, 550, 738-39). However, it is unclear why this would weigh against a finding that her subjective complaints caused significant limitations in her neck, hands, and arms. To the contrary, Plaintiff's consistent attempts to find a doctor who might be willing to perform surgery

seem to support, rather than detract from, a finding that Plaintiff's complaints were serious and were not being successfully addressed by the measures taken by her physicians. Additionally, as discussed above, the recommendations were not necessarily "consistent," in that Dr. Sadhu believed Plaintiff had a surgical issue.

The above issues with the ALJ's decision would likely constitute no more than a deficiency in opinion-writing that did not affect the outcome of the case if the ALJ had adequately considered the other relevant factors and explained why they weighed in favor of discounting Plaintiff's subjective complaints. However, it is not at all clear to the Court from the ALJ's decision whether ALJ considered the other relevant factors in assessing subjective complaints. The ALJ did not expressly discuss the *Polaski* factors in his decision, nor did he articulate what inconsistencies between Plaintiff's subjective complaints and the evidence justified his decision to almost completely discount her primary complaints of symptoms.

Notably, several of the *Polaski* factors appear to support Plaintiff's claims that she suffered from hand numbness and upper extremity pain that would significantly affect her ability to reach, finger, handle, and feel. Plaintiff's accounts of her daily activities, both in her function report and her testimony, are entirely consistent with her allegations regarding problems using her hands and arms: she reported that she could not use a computer or write with a pen, could not fasten buttons or tie shoes, could not grasp items, frequently dropped items such as coffee cups and her razor, and did not have enough feeling in her hands to tell whether the soap and conditioner were out of her hair when showering. Plaintiff's work history is also supportive of her subjective complaints: the evidence suggests that she worked full time for many years until her amended alleged onset date, and she attempted to return to work after leaving but was unable to do so because of her impairments. With regard to objective evidence, although the record contains a mixture of positive

and negative findings, much of the objective evidence is consistent with Plaintiff's allegations of hand numbness and neck pain, including numerous examination findings that Plaintiff had decreased sensation to light touch in her hands (Tr. 529, 539, 444, 555, 665); cervical MRI findings of "severe right and moderate left uncovertebral joint disease with severe right and moderate left foraminal stenosis and moderate central spinal stenosis" (Tr. 650); findings of positive Tinel's sign over the median nerve at the level of the wrists bilaterally (Tr. 608); findings of pain with cervical rotation and extension (Tr. 529, 536, 544, 555); findings of tenderness to palpation in the cervical and upper trapezius musculature (Tr. 529, 536, 539, 544); and EMG/NCV testing showing chronic neurogenic changes affecting the C5-C7 nerve roots on the right and the C6-C7 nerve roots on the left. (Tr. 541). Although the ALJ mentioned some of the relevant objective findings in summarizing Plaintiff's medical history, he did not explain how the objective medical findings in the record affected his assessment of her subjective complaints. Finally, the Court notes that the frequency and consistency with which Plaintiff complained of her symptoms further weighs against discounting them: as the parties' statements of fact show, throughout most of the alleged disability period, Plaintiff sought treatment, consultation, and/or testing for her hand, neck, and arm issues at least once a month.

The Court is mindful of the fact that it must defer to the ALJ's assessment of a claimant's subjective complaints if the ALJ conducts the required analysis, supported by good reasons and substantial evidence. *See Renstrom v. Astrue*, 680 F.3d 1057, 1063-64 (8th Cir. 2012). However, on the specific record in this case, the Court cannot say that the ALJ adequately considered the relevant factors or articulated good reasons for his assessment. Moreover, the ALJ's evaluation of Plaintiff's claimed inability to use her hands and arms appears to have been outcome-determinative: the vocational expert testified that a hypothetical individual with Plaintiff's other

limitations who could only occasionally handle, finger, and feel would not be able to do perform any jobs. (Tr. 128-29). The Court therefore finds it necessary to remand this case for further consideration of Plaintiff's subjective complaints. On remand, the ALJ should make it clear that he has considered all of the relevant *Polaski* factors, and to the extent that he discounts Plaintiff's allegations of symptoms, he should make it clear why he is doing so.

Because remand is required for re-evaluation of Plaintiff's subjective complaints, the Court need not reach Plaintiff's argument that the ALJ provided an insufficient discussion of how the evidence supported his RFC finding. However, the Court notes that when the ALJ re-evaluates the evidence on remand, he should ensure that his decision includes a narrative discussion, consistent with Social Security Ruling 96-8p, of how he reached his RFC assessment.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of September, 2019.